IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CARLOS ARMANDO ZAZUETA-ARRELLANO,<br><br>　　　　　　　Defendant. | 8:20CR222<br><br>**FINDINGS AND RECOMMENDATION** |

　　　This matter is before the Court on the Motion to Suppress (Filing No. 18) filed by Defendant, Carlos Armando Zazueta-Arrellano. Defendant filed a brief (Filing No. 19) in support of the motion and the government filed a brief (Filing No. 23) in opposition.

　　　The Court held an evidentiary hearing on the motion on December 8, 2020. Defendant was present with his attorney, Matthew M. Munderloh. The government was represented by Assistant United States Attorney, Thomas J. Kangior. Investigator Dail Fellin ("Inv. Fellin") of the Nebraska State Patrol ("NSP") testified on behalf of the government. The Court received into evidence without objection Defendant's Exhibits 101-103.

　　　A transcript (TR.) of the hearing was prepared and filed on December 12, 2020. (Filing No. 33). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

### BACKGROUND

　　　On July 10, 2020, Inv. Fellin assembled a team of NSP officers to conduct surveillance of a residence at 112 West Pasewalk in Norfolk, Nebraska, after receiving information that Jesus Miranda, a fugitive with an active arrest warrant, was residing there with two of his cousins (one of whom is Defendant). (TR. 5-6, 21). The warrant was issued due to Miranda's alleged violation of conditions of post-release supervision for a false imprisonment conviction. (Ex. 101). Inv. Fellin believed the underlying charge against Miranda arose out of a domestic issue involving assaults. (TR. 7). The person who provided Inv. Fellin with the information regarding Miranda's location had been at the residence and knew the individuals inside, including Miranda and Defendant. (TR. 21). Inv. Fellin's source reported observing weapons in the house and

stated Miranda had shared videos and photos of himself holding weapons. (TR. 7). Inv. Fellin shared this information and photographs of Miranda with the other NSP officers. (TR. 8).

Officers conducted their surveillance of the residence between approximately noon and 6:30 p.m. some distance away using binoculars. (TR. 8-9). During their surveillance, officers observed a total of four people, one woman and three men—including Miranda—enter the residence. Inv. Fellin communicated with the other officers by radio regarding an action plan to arrest Miranda. (TR. 9-11, 36). Officers secured the residence's exits by positioning themselves by the front and back doors and the detached garage. Officers knocked on the front door, announced their presence, and ordered everyone to exit the residence. A woman and two men— Miranda and Defendant—exited and were handcuffed and moved away from the front door so that officers could begin identifying them. (TR. 16). Without reciting *Miranda* warnings, an NSP officer asked Defendant about his immigration status and whether he rented the residence. (TR. 26). Defendant responded he was not a legal resident of the United States and that he was the renter of the residence. Defendant's responses were later incorporated into an application for a search warrant for the residence. (TR. 29-30; Ex. 102). Defendant was taken into custody and was at some point interviewed by an immigration investigator, again apparently without being advised of his *Miranda* rights. (TR. 33-34).

Officers believed a fourth individual was still inside the house based on their surveillance. The woman who had exited the residence told officers he was in the shower. (TR. 24). Officers remained at the front door verbally commanding that the individual exit the house, but when he did not, officers went inside the residence to locate him. (TR. 11-12). While inside the residence, officers conducted a protective sweep; some officers went into the basement while other officers went upstairs. (TR. 13, 37). During the sweep, officers observed in plain view what appeared to be drug paraphernalia on a bedroom floor and two long gun cases on a bedroom closet floor. (TR. 14, 37; Ex. 102). A photograph was taken of one of the items believed to be drug paraphernalia. (TR. 32-33; Ex. 103). Officers located the fourth individual in the bathroom on the main floor. (TR. 15). Officers later identified the parties inside the house and determined all three men had warrants for their arrest. (TR. 16).

Based on the items observed in plain view in the residence during the protective sweep, officers sought and obtained a search warrant for the residence and vehicles parked outside. (TR. 29-30; Ex. 102). During the execution of the search warrant, officers recovered firearms,

drug paraphernalia, and some venue items. (TR. 14-15). Defendant was charged in a single count Indictment with unlawful possession of a firearm due to his status as an alien who is unlawfully in the United States under 18 U.S.C. § 922(g)(5)(A) and §924(a)(2). (Filing No. 1).

Defendant has filed the instant motion to suppress any evidence recovered from the residence at 112 West Pasewalk.[1] Defendant first argues that officers did not have a reasonable belief that Miranda resided at the residence such that it was constitutionally permissible to execute his arrest warrant there. Therefore, Defendant argues any protective sweep conducted in connection with Miranda's unconstitutional arrest is violative of the Fourth Amendment. Defendant next argues that even if the Court concludes a protective sweep was permissible in connection with Miranda's arrest, officers had no basis to do so because Miranda had already exited the house and was detained and officers did not have reason to believe the individual remaining inside the house posed a danger to officers. (Filing No. 19 at pp. 6-7; TR. 44-45). Because the search warrant for the residence was obtained based on the officers' observations made during the illegal protective sweep, Defendant also asserts the warrant is not supported by probable cause. Defendant further argues the search warrant was defective because the application supporting the warrant includes his non-Mirandized statements that he was the renter of the residence and that he is not a legal resident of the United States. (Filing No. 19 at p. 9). Defendant separately seeks to suppress those statements as well as statements he made to the immigration investigator as violative of the Fifth Amendment because he was never provided *Miranda* warnings. The government argues that *Miranda* warnings were not required before asking Defendant routine booking questions about his identity and residence. Regardless, the government states it does not intend to offer any of Defendant's statements at trial. (TR. 46-47).

The undersigned magistrate judge finds that the officers' presence at 112 West Pasewalk to arrest Miranda based on a valid outstanding arrest warrant, the subsequent post-arrest protective sweep of the house for purposes of officer safety, the resulting "plain view" observation of drug paraphernalia and firearm case, and the search warrant obtained from the items observed during the protective sweep are all constitutionally permissible, and will therefore recommend Defendant's motion be denied.

---

[1] The government does not challenge Defendant's standing to contest the search of the residence because there is evidence Defendant rented the residence and lived there. (TR. 42).

## ANALYSIS

Officers first entered the residence at 112 West Pasewalk to conduct a protective sweep after executing an arrest warrant for Jesus Miranda. Because Defendant lived at the residence, he has standing to contest the officers' entry and search of the residence even though the constitutionality of the officers' conduct turns entirely on the propriety of the execution of an arrest warrant for someone else. Defendant argues the Fourth Amendment did not permit officers to execute the arrest warrant of Miranda at the residence because they did not have a reasonable belief Miranda resided there.

If officers wish to execute an arrest warrant of an individual at another person's home, "[o]fficers must either obtain a search warrant for the other person's home or have exigent circumstances or consent to enter without a search warrant." *United States v. Glover*, 746 F.3d 369, 373 (8th Cir. 2014). "When officers are unsure whether the suspect resides in the home, our court allows police entry if the arresting officers executing the arrest warrant at [a] third person's home have a reasonable belief that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed." *United States v. Bennett*, 972 F.3d 966, 971 (8th Cir. 2020)(quoting *Glover*, 746 F.3d at 373)(internal quotation marks omitted). Such requirements exist because "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." See *id.* (quoting *Glover* 746 F.3d at 373). However, "[w]here a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited." *Id.* (quoting *United States v. Bearden*, 780 F.3d 887, 893 (8th Cir. 2015)).

In *Bennett*, officers received an anonymous tip on the whereabouts of the defendant, who was wanted on outstanding arrest warrants. Although the address provided by the tip did not exist, officers proceeded to a similar address one block away where they observed a man matching the defendant's general description walking out of the back of the house. While standing on an adjacent property, one of the officers saw the man's face, recognized him as the defendant, and entered the backyard to arrest him. The defendant argued this arrest violated his Fourth Amendment rights because officers did not reasonably believe he resided at the house where they arrested him. In rejecting the defendant's argument, the Eighth Circuit distinguished

its cases requiring officers to reasonably believe the defendant lived at the residence because, before entering the property's curtilage, the officer affirmatively recognized the defendant and thus knew he was present. *Bennett*, 972 F.3d at 972. Because police recognized the defendant before entering the property's curtilage, it was "irrelevant" whether the officers had a reasonable belief that the defendant lived there. Law enforcement had a valid arrest warrant for the defendant, which provided officers with a legitimate law enforcement objective to enter the curtilage, and any intrusion on the defendant's privacy interests were minimal because he placed himself in a visible location observable from the street. *Id.*

In this case, Inv. Fellin was provided with reliable information that Miranda was living at 112 West Pasewalk. Inv. Fellin and his team of officers had photographs of Miranda so that they could recognize him. Officers conducted surveillance of the residence from public streets and observed Miranda enter the residence. See *Bennett*, 972 F.3d at 970 (quoting *United States v. Wells*, 648 F.3d 671, 678 (8th Cir. 2011))("The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares."). Just as in *Bennett*, officers recognized Miranda while on a public street and therefore knew he was present at the residence before officers ever stepped foot onto the property. Accordingly, the undersigned finds that the valid warrant for Miranda's arrest provided the officers with a legitimate law enforcement objective to, at a minimum, enter the property's curtilage to knock on the residence's front door. Whether it would have been constitutionally permissible for officers to enter the residence for the sole purpose of locating and arresting Miranda is irrelevant – Miranda was at the residence and surrendered himself to officers outside of the house. See *id.* at 971 ("[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways. . . . "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do.")(quoting *United States v. Wells*, 648 F.3d 671, 679 (8th Cir. 2011).

The undersigned further finds that under the totality of the circumstances, officers were justified in performing the protective sweep of the residence after Miranda was arrested outside of the residence. The Eighth Circuit has recognized a post-arrest protective sweep of a residence may be permissible under the Fourth Amendment "if the searching officer possesse[d] a

5

reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017)(quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)); see also *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006)("A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers."). "Protective sweeps in these circumstances are justified because officers are vulnerable during an arrest at a home, even when the arrestee and other occupants have been secured." *Alatorre*, 863 F.3d at 814 (citing *Buie*, 494 U.S. at 327). "The inquiry as to the reasonableness and validity of a protective sweep is necessarily fact-specific." *Id.* (quoting *United States v. Thompson*, 842 F.3d 1002, 1009 (7th Cir. 2016)). The Eighth Circuit in *Alatorre* found the following articulable facts and rational inferences justified a protective sweep of a residence, even after the defendant had been arrested and secured:

> (1) [The defendant]'s girlfriend lingered in the kitchen out of sight of the officers until she was specifically called to the door, indicating that it was easy for someone to hide just out of view of the officers inside the residence in a position from which an attack could be launched;
> (2) Guns or other dangerous weapons were conceivably present in the residence given [the defendant]'s criminal history involving concealed weapons and the alleged violent baton attack prompting the arrest, giving anyone remaining inside the residence access to weapons to use in an ambush of the officers;
> (3) The audible movements and behaviors (e.g., coming to the door and retreating; quietly conversing) of people behind the door and blinds after the officers knocked, along with the delays in answering the door, created a reasonable uncertainty as to how many people were inside the residence and their intentions toward the officers, . . .; and
> (4) Officers on the front porch of the residence dealing with [the defendant] and his girlfriend were vulnerable to attack from someone inside the residence.

*Id.* at 814-15 (internal citations omitted).

In this case, the undersigned concludes that the protective sweep of the residence was justified by articulable facts and rational inferences supporting the officers' reasonable beliefs that someone else could be inside of the residence posing a danger to them after Miranda's arrest. Inv. Fellin's testimony, which the undersigned finds credible, outlines the articulable facts justifying the officers' concerns for their safety. Specifically, Inv. Fellin had been informed by someone that had been inside the residence that there were weapons inside, which would be

6

accessible to anyone remaining inside. Officers knew Miranda had been in the house and had shared photographs of himself holding weapons. Although officers had secured three of the individuals they had seen enter the residence, they knew there was a fourth person that had not exited despite officers' verbal commands. See *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005)("A protective sweep is proper even if the potential individual being searched for is unidentified."). Inv. Fellin testified this was concerning for their safety because it raised questions as to why that person did not exit and what that person was doing, again considering that person had access to weapons. (TR. 12). Officers were in the front of the residence dealing with three occupants of the house, which would distract them or make them vulnerable to an attack from someone inside the residence. See *Alatorre*, *Id.* at 815. Finally, although officers only observed four people enter the residence during their half-day surveillance, they could not rule out the possibility that additional people remained inside the residence whom they had not seen during their surveillance. (TR. 24-25). Under the circumstances, the undersigned finds that officers had an objectively reasonable belief that the residence contained an individual posing a danger to officers and were justified in conducting a limited protective sweep.

But Defendant argues that even if the protective sweep was permissible to locate the fourth individual, officers could not continue the protective sweep beyond his removal from the residence. (Filing No. 19 at p. 7). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Alatorre*, 863 F.3d at 813 (citing *Buie*, 494 U.S. at 327. "The government bears the burden of proving that [the protective sweep] exception to the search warrant requirement applies." *United States v. Green*, 560 F.3d 853, 856 (8th Cir. 2009).

In this case, the undersigned finds that officers did not exceed the scope of a constitutional protective sweep. Inv. Fellin testified that officers split up into separate groups to locate the individual inside the house; some officers went upstairs while others went into the basement. Although the woman who exited the house stated the individual was in the bathroom, Inv. Fellin testified that officers expanded the protective sweep to other parts of the house because people are not always truthful to officers and because there could have been more people than the four they had observed. (TR. 24-25). Inv. Fellin testified his protocol for protective sweeps includes searching only areas where people can hide, such as closets, under a

7

bed, or in rooms, and his officers follow the same protocol. (TR. 13). The application for the search warrant provides that a red marijuana bong with marijuana residue was seen on a bedroom floor and two long gun cases, one of which had a Ruger Firearms emblem, were seen on a closet floor. A multicolored marijuana pipe was also observed in the living room in plain view. (Ex. 102). These items of evidentiary value were seen in plain view in areas where a person could have been located.

Based on the plain view doctrine, officers would have been justified in seizing the objects seen during the sweep. Nonetheless, rather than seize these objects, officers exited the residence and obtained a search warrant. The drug paraphernalia and gun cases observed by officers in plain view during their valid protective sweep provides probable cause for the search warrant. See *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)("Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched."). Probable cause for the search warrant exists based upon the items seen in the house; the paragraph describing Defendant's statements to the NSP officer that he was the renter of the residence and that he was not a legal resident of the United States are not material to the finding of probable cause, which would exist even if that information was excised.

Even if probable cause is lacking, the undersigned finds officers relied on the search warrant in good faith. Under the *Leon* good-faith exception, evidence seized pursuant to a search warrant issued by a judge will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984)). The *Leon* good-faith exception is not applicable (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (citing *Leon*, 468 U.S. at 923). None of the foregoing apply to the warrant application at issue. Defendant does not contend any of the information in the warrant

8

application is false, that the government concealed material information, or that the judicial officer simply rubber stamped the warrant. The warrant is not facially deficient and reliance on the warrant as authority to search the described property was not unreasonable. Therefore, none of the evidence recovered pursuant to the search warrant should be suppressed.

Finally, Defendant seeks to suppress any statements he made to the NSP officer and to the immigration investigator as violative of his Fifth Amendment rights. The government represented in its brief and at the suppression that it does not intend to offer any of Defendant's statements at trial. Therefore, the undersigned will recommend Defendant's motion be denied as to his statements, without prejudice, subject to reassertion at trial if the government seeks to introduce them.

In sum, because the officers were justified in conducting a protective sweep of the residence while executing an arrest warrant, and because both probable cause existed for issuance of the subsequent search warrant and the officers acted in reasonable reliance upon the search warrant, the undersigned magistrate judge will recommend Defendant's motion to suppress be denied. Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert F. Rossiter, Jr. that Defendant's Motion to Suppress (Filing No. 18) be denied.

Dated this 21st day of January, 2021.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. ailure to file a brief in support of any objection may be deemed an abandonment of the objection.